CHARLIE A. McBRIDE v. JOHNSON OIL AND TRACTOR COMPANY AND
ROBERT LEWIS DALTON

AND

WILLIAM F. ODELL v. JOHNSON OIL AND TRACTOR COMPANY AND
ROBERT LEWIS DALTON

No. 8022SC1036

(Filed 16 June 1981)

**Reformation of Instruments § 7; Torts § 7.1— personal injury action—releases—
reformation for mutual mistake**

> In an action to recover for personal injuries and property damage sustain-
> ed in an automobile accident between plaintiffs' truck and defendant's station
> wagon where defendant alleged that its agent, who was driving the station
> wagon, turned into the path of plaintiffs' vehicle in an effort to avoid colliding
> with a motorcycle driven by the individual defendant and that plaintiffs had
> executed releases which forever discharged the individual defendant and "any
> and all other persons, firms, and corporations of and from any and all actions,
> causes of action, claims or demands . . . [arising out of the subject accident],"
> the trial court erred in entering summary judgment for defendant on the basis
> of the releases, since plaintiffs alleged that the parties to the releases never
> intended to release anyone other than the individual defendant, his insurance
> company, and his representatives and plaintiffs offered affidavits to support
> their allegation of mutual mistake.

APPEAL by plaintiffs from *Collier, Judge.* Judgments entered
8 July 1980 in Superior Court, DAVIDSON County. Heard in the
Court of Appeals 29 April 1981.

Plaintiffs filed separate complaints against Johnson Oil and
Tractor Company seeking to recover for personal injuries and
property damage incurred in an automobile accident on 4 May
1975. They alleged that plaintiff Odell was the driver and plaintiff
McBride was the passenger in a pickup truck which was struck
head on by a station wagon owned by the defendant and operated
by one Jan Coppley Johnson as agent of the defendant. Defendant
answered, alleging among other defenses that Johnson turned in-
to the path of plaintiffs in an effort to avoid colliding with a
motorcycle which one Robert Lewis Dalton drove in front of her
from an intersecting street. Defendant also pleaded as a bar cer-
tain releases executed by the plaintiffs on 29 July 1977.

Defendant invoked discovery to establish that the plaintiffs
executed the releases and received certain sums of money in con-

sideration therefor. The releases assert that the plaintiffs "release, acquit and forever discharge ROBERT LEWIS DALTON and any and all other persons, firms and corporations of and from any and all actions, causes of action, claims or demands . . . [arising out of the subject accident]."

Defendant moved for summary judgment, relying upon the releases. Plaintiffs filed affidavits from themselves, their attorney and Dalton's attorney. These affidavits, which are reviewed in more detail below, tend to show that the parties to the releases never intended to release anyone other than Dalton, his insurance company and his representatives. Plaintiffs also moved to amend their complaints in order to add Robert Lewis Dalton as a defendant and to pray for reformation of the releases. The amendments, which were allowed by order of the trial court, each allege that the plaintiff orally agreed to release the defendant Dalton, that the critical phrase quoted above was inserted in each release through mutual mistake of the parties, and that the release does not express the oral agreement between the parties thereto. Defendant Dalton filed answers, generally denying the allegations of mistake.

A hearing was held upon the summary judgment motions of defendant Johnson Oil and Tractor Company and defendant Dalton's motions to dismiss for failure to state a claim against him. The motions were allowed. Plaintiffs appeal.

*Wilson, Biesecker, Tripp & Wall, by Roger S. Tripp, for plaintiff appellants.*

*Caudle, Underwood & Kinsey, by C. Ralph Kinsey, Jr., and Hal C. Spears, for defendant appellee Johnson Oil and Tractor, Inc.*

*Hudson, Petree, Stockton, Stockton & Robinson, by James H. Kelly, Jr., for defendant appellee Robert Lewis Dalton.*

HILL, Judge.

Defendant Johnson Oil and Tractor Company relies upon *Battle v. Clanton*, 27 N.C. App. 616, 220 S.E. 2d 97 (1975), *cert. denied*, 289 N.C. 613, 223 S.E. 2d 391 (1976), to support the summary judgments herein. The *Battle* case involved an automobile accident in which the plaintiff filed a complaint against defend-

ants Stallings, Clanton and Joyner. Plaintiff settled his claims against defendants Clanton and Joyner and executed a release. This instrument released Clanton and Joyner and "*all other* persons, firms, or corporations who are or might be liable, from *all* claims of *any kind* or character which I have or might have against it, him or them . . .." The trial court then allowed summary judgment dismissing plaintiff's claim against defendant Stallings on the basis of this release, and plaintiff appealed. This Court affirmed, holding "that the subject release, by its express terms, provided for the discharge and release of all other tortfeasors from all other claims resulting from the subject release on 10 August 1974, including both the defendant Stallings and his insurer, Nationwide Mutual Insurance Company." *Id.* at 621, 220 S.E. 2d at 100. The plaintiffs in the present case urge us to overrule *Battle* in favor of "the modern trend of decisions in other jurisdictions." This we refuse to do. We reaffirm the holding of *Battle*. We agree, however, with the plaintiffs' alternative argument to the effect that the present case is distinguishable from *Battle*.

The plaintiff in *Battle* argued that the release therein was not intended to release anyone other than Clanton and Joyner and that the critical phrase quoted above was "mere surplusage." In the present case, the plaintiffs have amended their complaints in order to allege that the critical phrase was inserted in the releases through mutual mistake, and they have prayed for reformation of the releases in order to delete the phrase. Further, they have presented affidavits in support of their allegations of mutual mistake. No such issue of reformation was presented in the *Battle* case.

An instrument which fails to express the true intention of the parties may be reformed to express such intention when the failure is due to the mutual mistake of the parties, to the mistake of one party induced by fraud of the other, or to mistake of the draftsman. *Parker v. Pittman,* 18 N.C. App. 500, 197 S.E. 2d 570 (1973). Such a mutual mistake of the parties may be one relating to the legal effect of the instrument. Where, by reason of an error of expression or mistake as to the force and effect of the language used, an instrument fails to express the intent of the parties, equity will afford relief. *Trust Co. v. Braznell,* 227 N.C. 211, 41

S.E. 2d 744 (1947); 13 Williston on Contracts, § 1585 (3rd ed. 1970); 66 Am. Jur. 2d, Reformation of Instruments § 19 (1973).

In *Trust Co. v. Braznell, supra,* two of the defendants conveyed a building to the third defendant by a deed which included a provision purporting to protect the leases of existing tenants, including the plaintiff. The new owner thereafter refused to recognize plaintiff's lease, and plaintiff sued. The evidence at trial tended to show that it was understood and agreed that the deed should protect the tenants' leasehold rights but that this intention was inadequately expressed. Judgment was entered for the plaintiff and the Supreme Court found no error. The Supreme Court wrote:

> A bare, naked mistake of law affords no grounds for reformation. This, however, is the general rule, qualified by many exceptions. [Citations omitted.]

> Where the error of law induces a mistake of fact, that is, where, by reason of an error of expression or mistake as to the force and effect of the language used, the contract fails to express the intent of the parties, equity will afford relief. [Citations omitted.]

> "The phrase 'mutual mistake' means a mistake common to all the parties to a written instrument and usually relates to a mistake concerning its contents or its legal effect." [Citation omitted.] "It is wholly immaterial whether . . . the parties failed to make the instrument in the form they intended, or misapprehended its legal effect." [Citations omitted.]

> All the parties conceived that the language used adequately protected the outstanding leases. This was a mistake of law. They intended to include in the deed a provision which would fully protect plaintiff and other tenants. By reason of the use of language mistakenly believed to be, but which was not, sufficient to accomplish the common purpose, such provision does not appear in the deed. They intended the deed to include what it does not include. This constitutes a mistake of fact justifying reformation.

*Id.* at 214-15, 41 S.E. 2d at 746-47.

In *Durham v. Creech,* 32 N.C. App. 55, 231 S.E. 2d 163 (1977), this Court dealt with a conveyance of land in which the parties in-

tended to reserve a life estate for the grantors but the instruments as executed failed to do so. In reversing a directed verdict for the defendant-grantees, this Court wrote:

> When, due to the mutual mistake of the parties, or perhaps a mistake by their draftsman, the agreement expressed in a written instrument differs from the agreement actually made by the parties, the equitable remedy of reformation is available. . . .
>
> .   .   .   .
>
> It is immaterial whether the mistake arose out of the attorney's ignorance. This is not a case where reformation is sought of a bare mistake of law. A bare mistake of law generally affords no grounds for reformation. *Trust Company v. Braznell*, 227 N.C. 211, 41 S.E. 2d 744 (1947). There is evidence that the parties agreed and intended to reserve a life estate. The instrument purporting to reserve the life estate, executed along with the deed, was ineffectual, which may be a mistake of law as to the legal efficacy of the transaction. However, the failure to accomplish the intention of the parties, to reserve a life estate, was a mistake of fact which will afford reformation. See, *Trust Company v. Braznell*, supra.
>
> Evidence which tends to show the draftsman's error also tends to show that the parties were mistaken in their beliefs. The evidence would support a finding of mutual mistake by the parties.

*Id.* at 59-60, 231 S.E. 2d at 166-67. *Accord, Phillips v. Woxman*, 43 N.C. App. 739, 260 S.E. 2d 97 (1979), *cert. denied*, 299 N.C. 545, 265 S.E. 2d 404 (1980).

More recently, this Court decided *Cunningham v. Brown*, 51 N.C. App. 264, 276 S.E. 2d 718 (1981). In *Cunningham* plaintiff-husband was operating a motorcycle on which plaintiff-wife was a passenger. The motorcycle collided with a vehicle driven by the defendant, and plaintiffs sued. The defendant moved for summary judgment as to plaintiff-wife's claim in reliance upon a release executed by her. This instrument provided that plaintiff-wife released her husband and "any other person, firm or corporation charged or chargeable with responsibility or liability" in connec-

tion with the accident. Plaintiff-wife filed an affidavit in opposition to summary judgment in which she asserted that an adjuster from her husband's insurance company notified her that certain money was available from his insurance policy to pay for her medical expenses and lost wages and that she became worried about paying the expected medical expenses and contacted the insurance company about the money. A second adjuster visited plaintiff-wife in her home and produced a check and a document for her signature. The adjuster asked whether plaintiff-wife intended to sue the other party to the accident, she answered that it was none of his business, and he stated that their dealings "would not affect that anyway." Plaintiff-wife signed the document, but she regarded it as a receipt for the check and she had no intention of releasing the defendant. At the hearing on defendant's motion for summary judgment, the trial court excluded plaintiff-wife's affidavit on grounds of the parol evidence rule and allowed defendant's motion. On appeal, this Court held that the affidavit should have been considered since the parol evidence rule does not preclude admission of extrinsic evidence when one is seeking to prove that a written agreement was executed under circumstances amounting to fraud or mutual mistake. This Court went on to hold that plaintiff-wife's affidavit raised genuine issues of fact as to fraud and mutual mistake in connection with execution of the release and that the trial court had therefore erred in granting summary judgment.

In light of the above authorities, we turn to the documents before the trial court at the summary judgment hearing in the present case. Defendant Johnson Oil and Tractor Company relied upon the releases executed by the plaintiffs. The plaintiffs presented affidavits from themselves and from the attorneys involved in the negotiation and execution of the releases. The affidavits submitted by the plaintiffs tended to show that they had reached a settlement of their claims against Robert Lewis Dalton, that they had signed releases releasing Dalton, that they at no time intended to release anyone other than Dalton and his insurance company and his representatives, that nothing was mentioned about Johnson Oil and Tractor Company during the settlement negotiations except that they would be reserving their rights to sue Johnson Oil and Tractor Company, that they never negotiated for settlement of their claims against Johnson Oil and

Tractor Company, and that any release purporting to release anyone other than Dalton and his insurance company and representatives was in error and does not reflect the intent and meaning of the settlement agreements. Plaintiffs' attorney asserted by his affidavit that he reached a settlement of plaintiffs' claims against Dalton and releases were executed, that no negotiations were had to settle the plaintiffs' claims against Johnson Oil and Tractor Company and no consideration was paid on behalf of Johnson Oil and Tractor Company, that the settlement agreement concerned only Dalton and his insurance company and his representatives, that the settlement agreement and the releases were not intended to discharge Johnson Oil and Tractor Company, and that any paperwriting purporting to release anyone other than Dalton and his insurance company and his representatives is in error and does not reflect the true intent and meaning of the settlement agreement. Dalton's attorney asserted by his affidavit that he reached a settlement of plaintiff's claims against Dalton and releases were executed, that he did not represent Johnson Oil and Tractor Company, that the intent of the parties was to release Dalton and his insurance company and his heirs and representatives, and that the releases were not intended to discharge Johnson Oil and Tractor Company. Johnson Oil and Tractor Company directed interrogatories to Dalton concerning the denial of a mistake which he made in his answers to the amended complaints; and although Dalton's answers to the interrogatories were filed late, they were apparently considered at the summary judgment hearing. The answers are, in pertinent part, as follows:

> By way of further clarification, the Defendant [Dalton] is informed that Plaintiff's counsel did at one time mention to the Defendant's [Dalton] counsel that the Plaintiff did intend to proceed with a lawsuit against Johnson Oil and Tractor Company. After negotiation between my counsel and counsel representing the Plaintiff, a settlement of the claims of William F. Odell and Charlie A. McBride against me were reached. I understand that in order to complete the settlement, my counsel, using standard releases provided by the liability insurance carrier, forwarded releases to be executed by Mr. McBride and Mr. Odell to the Plaintiff's counsel along with the settlement consideration. The purpose of the

releases was to conclude the claims of William F. Odell and Charlie A. McBride against me from any and all actions, causes of actions, and claims. My counsel did not represent Johnson Oil and Tractor Company, either in the negotiation of the settlement or the drafting of the release, and the release was not intended to discharge Johnson Oil and Tractor Company. My counsel did intend to forward the standard release sent to and executed by the Plaintiff.

We conclude that the plaintiffs sufficiently supported their claims for reformation. Their showing at the summary judgment hearing presented a genuine issue of material fact, and the trial court erred by entering summary judgment for the defendant Johnson Oil and Tractor Company. *See Cunningham v. Brown, supra; Cameron v. Cameron,* 43 N.C. App. 386, 258 S.E. 2d 814 (1979).

The trial court also dismissed the claims against defendant Dalton which were stated in the amended complaints. These rulings must be reversed. The plaintiffs have sufficiently alleged claims for reformation of the releases, *see Huss v. Huss,* 31 N.C. App. 463, 230 S.E. 2d 159 (1976); and the defendant Dalton is a necessary party to the actions for reformation, *cf. Kemp v. Funderburk,* 224 N.C. 353, 30 S.E. 2d 155 (1944).

The orders appealed from are

Reversed.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.